**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Guadalupe Estina Velazquez,<br><br>  Defendant. | No. CR-12-00877-004-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant Guadalupe Estina Velazquez's ("Defendant") Expedited Motion for Compassionate Release (Doc. 1222). For the reasons stated below, the motion shall be denied without prejudice.

**I.   BACKGROUND**

On September 5, 2019, Defendant pleaded guilty to one count of Conspiracy to Possess with the Intent to Distribute Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846 and one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(c). (Docs. 1168; 1202.) On December 19, 2019, the Court sentenced Defendant to a 90-month term of imprisonment and 4 years of supervised release. (Doc. 1203.) Defendant is currently located at RRM Phoenix and is scheduled to be released on June 1, 2023. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (search for "Guadalupe" with "Estina" with "Velazquez") (last visited June 22, 2020).

On April 29, 2020, Defendant, through former counsel, sent a letter dated April 24, 2020 to the Director of the Federal Bureau of Prisons (the "BOP") and the Warden of FCI Phoenix in which she requests the BOP to transfer her "to home confinement to serve the remainder of her sentence, alternatively for the duration of the ongoing COVID-19 pandemic in accordance with Attorney General William Barr's directives to the BOP on March 26 and April 3, 2020." (Doc. 1222-2, Exhibit ("Ex.") 8.) Defendant never received a response. (Doc. 1222-2, Ex. 9.) On June 1, 2020, Velazquez brought the instant motion (Doc. 1222) and Plaintiff United States of America (the "Government") filed a response in opposition thereto on June 16, 2020. (Doc. 1224.) Defendant filed a Reply on June 23, 2020. (Doc. 1225.)

## II.     LEGAL STANDARD

"Compassionate release is governed by 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018." *United States v. Muhammed*, No. CR-12-01793-001-PHX-DGC, 2020 WL 3104275, at *1 (D. Ariz. June 11, 2020) (citing Pub. L. No. 115-391, 132 Stat. 5194, 5239-40).[1] Under 18 U.S.C. § 3582(c)(1)(A), a prisoner may only make a motion for compassionate release after (1) requesting the BOP to make such a motion on her behalf and (2) either: (a) exhausting all administrative rights to appeal a failure of the BOP to do so; or (b) 30 days have elapsed after the warden of her facility received the request, whichever is earlier.

This exhaustion requirement is mandatory and cannot be waived by the Court. *See United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2020 WL 1929200, at *2 (D. Ariz. Apr. 21, 2020) ("The critical inquiry is whether the text of § 3582 allows for the Court to excuse Defendant's failure to exhaust her administrative remedies. There is no indication in the statutory text, nor has Defendant pointed to other supporting evidence, that would establish Congress meant to confer on the courts the authority to waive exhaustion."). Indeed, when Congress enacts a statutory exhaustion provision, "Congress

---

[1] Unless otherwise indicated, in citing cases, all internal alterations, emphases, footnotes, quotation marks, and citations are omitted.

- 2 -

sets the rule—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1857 (2016) (citing *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993)). The COVID-19 pandemic does not create an exception to this rule. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (finding the exhaustion requirement "presents a glaring roadblock foreclosing compassionate release" if not complied with and denying on exhaustion grounds a motion for compassionate release that cited COVID-19).

### III.  ANALYSIS

The motion shall be denied because Defendant failed to serve her letter on the "warden of the defendant's facility." *See* 18 U.S.C. § 3582(c)(1)(A). While she served her April 24, 2020 letter on the Warden of FCI Phoenix, she is not located at that facility; rather, she is located at RRM Phoenix. *See* Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (search for "Guadalupe" with "Estina" with "Velazquez") (last visited June 22, 2020). Further, although she later served her letter on Elizabeth Paultre, who ostensibly works for the BOP at RRM Phoenix, (*see* Doc. 1222-2, Ex. 8 at 1), she has provided no evidence Paultre serves as the warden of (or in a warden-like capacity at) RRM Phoenix. This may explain why Defendant never received a response. If Defendant wishes to renew her motion, she must first serve a request for compassionate release on the warden (or warden-equivalent) at RRM Phoenix.

Alternatively, the motion shall be denied because she failed to satisfy the exhaustion requirement, as she never requested the BOP to make a motion for compassionate release on her behalf. Indeed, nowhere in her letter does she ask for a reduction in her sentence, invoke 18 U.S.C. § 3582(c), or even employ the term "compassionate release." Rather, she requests to be released on home confinement for the duration of her sentence, or at least for the duration of the COVID-19 pandemic, pursuant to memoranda issued by Attorney General Barr. (Doc. 1222-2, Ex. 8 at 2, 5-6.) She also appears to invoke, albeit inartfully, the recently enacted Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). (*See* Doc. 1222-2, Ex.8 at 5-

6 ("In addition the enactment of the CARES act, which broadens the authority of the Attorney General and the Director of the BOP, during the Covid-19 crisis, to release prisoners to home confinement, Attorney General Barr issued another memorandum to the FBOP on April 3, 2020; in which he made a finding that 'emergency conditions are materially affecting the functioning of the Bureau of Prisons.'" (internal citation omitted)).)

But a request invoking the CARES Act is not the same as one invoking the First Step Act. Indeed, while Defendant's letter and Defendant's motion raise substantially similar concerns and rely upon substantially similar facts, the CARES Act and 18 U.S.C. § 3582(c) are distinguishable. "[A] request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release." *United States v. Allen*, CASE NO. 2:14-cr-024, 2020 WL 2199626, at *1 (S.D. Ga. May 6, 2020).

First, while the CARES Act gives the Director of the BOP the authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement," Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516, it does not give the Director the authority to take the far more drastic step of reducing an inmate's sentence. *See, e.g.*, *United States v. Wade*, Case No. 5:15-cr-00458-EJD-1, 2020 WL 3254422, at *2 (N.D. Cal. June 16, 2020) ("Compassionate release is 'rare' and 'extraordinary;' the current national emergency does not change that."); *United States v. Dean*, Case No. 3:18-cr-00119-SI, 2020 WL 3073199, at *6 (D. Or. June 10, 2020) ("Compassionate release is 'rare' and 'extraordinary,' and courts routinely deny such claims."). Second, in effectuating Attorney General Barr's memoranda regarding home confinement in connection with the CARES Act,[2] the BOP utilizes its authority under 18

---

[2] On March 26, 2020, Attorney General Barr ordered the Director of the BOP to prioritize the use of statutory authority to place prisoners in home confinement. Memorandum from the Attorney Gen. to Dir. of Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. On April 3, 2020, he issued a memorandum directing the BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations." Memorandum from the Attorney Gen. to Dir. of Bureau of Prisons 1 (Apr. 3, 2020), https://www.justice.gov/file/1262731/download.

U.S.C. § 3623(c)(2) and 34 U.S.C. § 60541, and not 18 U.S.C. § 3582(c). *See Allen*, 2020 WL 2199626, at *1. Third, while the BOP's decisions under 18 U.S.C. § 3582(c) are subject to judicial review, its decisions under the CARES Act are not. *See, e.g.*, *United States v. Carlucci*, CRIMINAL ACTION No. 10-00464-01-KHV, 2020 WL 2527013, at *3 (D. Ariz. May 18, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision.").

It is true that Defendant moved for compassionate release after more than 30 days had lapsed since she served her April 24, 2020 letter. But to find that a failure to respond to a request under the CARES Act equates to a failure to respond to a request under the First Step Act would be to waive the First Step Act's exhaustion requirement—which the Court cannot do. *See United States v. Gray*, Case No.: 18CR2118-JLS, 2020 WL 2991514, at *2 (S.D. Cal. June 4, 2020) ("Because it raised the same concerns as the motion currently at issue, it is tempting to infer a lapse for § 3582(c)(1)(A) purposes from the lack of a response to defense counsel's letter regarding CARES Act relief. However, the Court cannot permissibly fashion an equitable remedy that is contrary to the explicit terms of the statute from which the Court derives its authority to act."). Ultimately, Congress could have relaxed the exhaustion requirement it enacted in the First Step Act to make it easier for inmates to attain compassionate release in light of the COVID-19 pandemic. Because it did not, the Court cannot address the merits of Defendant's motion.

Nor should it. Indeed, Congress allocated initial decision-making authority regarding compassionate release to the BOP, which has a valuable perspective regarding the health and safety of inmates. *See id.* ("[T]here is good reason for the requirement of initial resort to administrative remedies for compassionate release because the BOP conducts an extensive assessment for such requests and is in the best position to evaluate considerations such as the health of the inmate and BOP staff, as well as the safety of the public."). Because Defendant is in the BOP's custody, "the BOP is in a better position to initially determine" her "medical needs," her "specific risk of COVID-19 and the risk to inmates generally" at Defendant's facility. *See Carlucci*, 2020 WL 2527013, at *2. It is

also "in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under Section 3624(c)." *Id.*; *see also* BOP Program Statement 50.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  While the Court has final de novo decision-making authority, a merits decision would be imbedded in agency expertise from which the Court would benefit.

While the Court will not consider the merits of Defendant's motion, it should be noted that to the extent the motion is based upon Defendant's concerns related to her now-past pregnancy, the motion is moot.  In addition, even if Defendant's April 24, 2020 letter does constitute a request under 18 U.S.C. §§ 3582(c)(1)(A), the motion as to her nursing concerns as outlined in her Notice of Changed Circumstances (Doc. 1223) is not ripe because such issues were never raised before the BOP.

Finally, Defendant's Reply suggests that relief should be granted on the same bases that were argued at the December 19, 2019 sentencing but found unpersuasive then.  There is no legal basis for that.  Nor can the statutory requirement of exhaustion be dispensed with because Defendant's supposed multiple release requests to BOP officials went unanswered.  BOP officials answered any requests they were required to answer. Defendant made no request to her warden, the official who must respond to a First Step Act request, which she did not make in any event.

IT IS THEREFORE ORDERED that Defendant Guadalupe Estina Velazquez's Expedited Motion for Compassionate Release (Doc. 1222) is denied, without prejudice.

Dated this 24th day of June, 2020.

_____
Neil V. Wake
Senior United States District Judge